IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROVER PIPELINE LLC, | : | |
| Plaintiff, | : | Case No. 2:17-cv-105 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| MARK C. KANZIGG, *et al.*, | : | Magistrate Judge Jolson |
| Defendants. | : | |

**OPINION & ORDER ON PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Plaintiff, Rover Pipeline LLC's Motion for Order Confirming Condemnation Authority for Additional Temporary Workspace Easements and Temporary Workspace Extensions and Awarding Immediate Possession of the Easements and Extensions Sought in the Fourth Amended Complaint (hereinafter "Motion for Additional Easements and Immediate Possession"). (ECF No. 803). The Court held a S.D. Ohio Civ. R. 65.1 Conference on March 25, 2019 at 2:00 pm. At the Rule 65.1 Conference, counsel for Rover represented that he was presently seeking as easement on two tracts of land—the tract belonging to the heirs of Kanzig, OH-BE-CC-002.000, 003.000 and the Barrax tract, OH-BE-CC-032.000, 033.000, 035.000.[1] Having considered the Motions, and the pleadings in support of the Motion, as well as the arguments of counsel, this Court hereby **GRANTS** the Plaintiff's Motion as to the aforementioned tracts.

---

[1] Plaintiff's Motion for Additional Easements and Immediate Possession requested relief against numerous landowners. At the 65.1 Conference, however, counsel for Rover represented that, at this time, they were only seeking a TRO as to these two properties. Therefore, this Order is limited to the above-referenced Kanzig and Barrax properties.

1

## II. BACKGROUND

Plaintiff Rover Pipeline LLC is a natural gas company that operates a pipeline through part of Ohio. Rover's right to construct and operate the pipeline is contingent upon compliance with certain environmental conditions. (ECF No. 347, Exh. B at ¶281(F)(3)).

Rover filed a Fourth Amended Complaint and a Motion for Order to Confirm Condemnation Authority for Additional Temporary Workspace Easements and Temporary Workspace Extensions and Awarding Immediate Possession of the Easements and Extensions Sought in the Fourth Amended Complaint on March 15, 2019. (ECF Nos. 802, 803). In the Fourth Amended Complaint, Rover represents that under Rover's FERC Certificate, Rover "has ongoing obligations to restore and remediate the Easement areas and to stabilize the ground and repair slips for the safe and reliable operation of the pipeline." (ECF No. 803 at ¶23). Rover is also required to follow FERC's Final Environmental Impact Statement ("FEIS") to reduce environmental impacts.

Rover has filed this Motion for Additional Easements and Immediate Possession to prevent possible safety issues and environmental harm. Land around the pipeline is susceptible to "slips," which Rover defines as "the progression of rock and soil down a slope due to gravity and geologic pressure." (ECF No. 803 at 6 n.1). With respect to the two properties at issue here, Rover represented to this Court at the Rule 65.1 Conference that Rover must engage in tree clearing on these two properties to facilitate proper remediation of the existing slips. The particular tree clearing at issue here could affect a sensitive species of bats, the Indiana bat, and therefore tree clearing is only permitted from October 1 to March 31. (ECF No. 803 at 2, 5).

Rover filed the Fourth Amended Complaint seeking temporary workspace easements "solely for the restoration and remediation of Defendants' property and for slip repair and ground

stabilization efforts where needed." (ECF No. 802 at ¶28). Rover has been unsuccessful in its attempts to contact the two landowners subject to this Order. At the 65.1 Conference, Rover noted that as to the Kanzig tract, Rover has contacted six landowners, all of whom have agreed to give Rover the temporary easements, but Rover has not been able to verify the existence or identity of the additional heirs of Kanzig with rights in the parcels. As to the Barrax property, Rover previously had contact with the landowner, but Rover has not been able to locate her as of late. Rover noted that the property now appears to be abandoned. Ms. Barrax was included on the list of landowners attached to the Third Amended Complaint (ECF Nos. 782, 784), and the Kanzig property was included in the Third and Fourth Amended Complaints.

### III. LAW AND ANALYSIS

A Temporary Restraining Order is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 U.S. Dist. LEXIS 61151, at *10 (S.D. Ohio Apr. 21, 2017). Federal Rule of Civil Procedure 65(b) requires a Court to examine, on application for a temporary restraining order, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Therefore, although some courts would examine the four factors required for issuance of a preliminary injunction, a focus on "[t]he irreparability and immediacy of harm" is all that is required. *See, e.g., Women's Med. Prof'l Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1–2 (S.D. Ohio Feb. 27, 2008) (Marbley, J.) (focusing on the irreparability and immediacy of harm before ruling on TRO).

This Court has already examined the appropriateness of a TRO and preliminary injunction in the context of a request for confirmation of condemnation authority and for immediate possession in its Order dated March 1, 2017. (ECF No. 460).

Special procedures under Federal Rule of Civil Procedure 65(b) govern the process of applying for, and granting, a temporary restraining order where, as here, the opposing party was not given written or oral notice. A TRO may issue in such circumstances only when two requirements are met:

> "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

Fed. R. Civ. P. 65(b)(1). The Local Rules of the Southern District of Ohio further require such writing to be an affidavit stating "why such service cannot or need not be made or be required." S.D. Ohio Civ. R. 65.1(b).

Rover has submitted an affidavit detailing its attempts to serve the unknown heirs of Kanzig and Judith Barrax. Rover, through counsel, avers that it has not been able to verify the existence of additional parties to be noticed for the Kanzig Property. Rover has also detailed its attempts to locate Judith Barrax, the owner of the Barrax tract. Generally, a "district court would be justified in proceeding ex parte [] where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found." *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (citing *American Can Co. v. Mansukhani*, 742 F.2d 314 (7th Cir. 1984)). Such is the case here. Rover has complied with the local rules and meets this requirement for an ex parte temporary restraining order.

Usually, ex parte restraining orders are also "limited to preserving the status quo only for so long as is necessary to hold a hearing." *First Technology Safety Systems, Inc.*, 11 F.3d at 650. Here, Rover's request does not fall squarely within the category of preserving the status quo, as Rover will be clearing trees on the properties. But, Rover is also seeking to avoid future harm. In that sense, Rover does seek to preserve the status quo. Because Rover's action will prevent future harm and thereby ostensibly preserve the status quo and because of the serious consequences if Rover's right to these easements is denied, this Court finds that Rover meets the requirements for an ex parte temporary restraining order.

### A. Immediacy of Harm

Plaintiff has met its burden of showing immediacy of harm. The deadline for tree clearing ends in merely five days. Without this Order, Rover will have to wait until October 1st to complete any tree clearing on these properties. In the meantime, property and environmental damage could continue and slips could worsen. (ECF No. 803 at 5–6).

### B. Irreparability of Harm

Plaintiffs have also showed that they will suffer irreparable harm absent a temporary restraining order and immediate possession of the easements. Harm is irreparable if it "is not fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Rover argues that immediate possession of the temporary easements is required to ensure the safety of the pipeline and that a delay will exacerbate any environmental harm. (ECF No. 803 at 9–10). Rover has also argued that it could face significant financial harm if FERC were to determine that the pipeline needed to be closed. (ECF No. 803 at 6). This Court has recognized before the possibility of irreparable harm from the inability to comply with a

pipeline's FERC responsibilities.  *See Tex. E. Transmission, LP v. Barack*, No. 2:14-cv-0336, 2014 WL 1408058, at *2 (S.D. Ohio Apr. 11, 2014) (Frost, J).  The possibility that the pipeline could be on unstable ground is a serious concern that also meets the requirement of showing irreparability of harm.  Rover has therefore shown that it will be irreparably harmed without the issuance of this TRO.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Plaintiff's Motion for Additional Easements and Immediate Possession.  This Order was issued orally at the Rule 65.1 Conference on March 25, 2019 at 2:00 pm.  Pursuant to Federal Rule of Civil Procedure 65(b)(2), this TRO is in effect for 14 days and therefore shall expire on April 8, 2019.

Rover shall post bond equal to the final offer amount to the landowners, by noon on March 27, 2019.  For the Kanzig property, that amount is $12,500.  For the Barrax property, that amount is $10,530.  Rover's total bond shall therefore be $23,030.

**IT IS SO ORDERED.**

                                                                                  s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 26, 2019**