IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROVER PIPELINE, LLC** | Case No. 2:17-cv-00105 |
| Plaintiffs, | |
| | JUDGE ALGENON L. MARBLEY |
| v. | |
| | Magistrate Judge Jolson |
| **MARK C. KANZIGG, et al.,** | |
| Defendants. | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants North American Coal Royalty Company and Bellaire Corporation's ("Defendants") Motion for Supplemental Instructions. Doc. 920. For the reasons set forth below, the Court **DENIES** the Motion [#920].

### II. BACKGROUND

On March 31, 2020, the Commission will hold a hearing to determine the just compensation and/or damages that Plaintiff Rover Pipeline, LLC owes to Defendants for constructing a pipeline on Defendants' property. Previously, the Court, after considering all objections from parties to this litigation, issued a set of instructions to the Commission with respect to the law it must apply in dispatching its duties. *See* Doc. 722. Relevant here, the Court issued the following instructions regarding comparable sales and mineral evaluations:

> **Evidence as to Sales and Leases of Comparable Properties.** Evidence may be received as to sales and leases of allegedly comparable properties in the vicinity, and in other areas. Bona fide sales of comparable properties, made within a reasonable time before the date of taking of the property involved may be the best obtainable evidence of market value at the time of taking. Each commissioner should consider such evidence to the extent that he finds it of assistance in arriving at his finding as to market value.

> **Mineral Valuation.** In addition to comparable sales, income capitalization may be used to determine the fair market value of mineral properties, if the owner proves that sufficient minerals remain to allow the commercial recovery and sale of the minerals and if the owner has established beyond mere speculation that Rover's actions have impeded his or her ability to access those same minerals. The Commission may assess the foreseeable net income flow from the property for its productive life, based on evidence derived from or demonstrably related to the actual market in mineral royalties, reduced to a present value figure.

*Id.* at 20, 28. Defendants have filed a timely Motion seeking to amend the above instructions, clarifying that the Commission: (1) may not consider forced sales as evidence of fair market value; and (2) must consider the full value of minerals (e.g., coal), and not just the royalties that a lessor might receive in return. *See* Doc. 722 at 29 ("Any objection or supplemental instruction must be made specifically and in writing to this Court thirty (30) days prior to a scheduled hearing."). Plaintiff opposes both proposed amendments.

### III. ANALYSIS

#### 1. Comparable Sales

First, Defendants ask the Court to amend its instruction regarding comparable sales to make clear that the Commission cannot consider forced sales as evidence of fair market value. To that end, Defendants have proposed the following amendment, captured in the italicized language:

> **Evidence as to Sales and Leases of Comparable Properties.** Evidence may be received as to sales and leases of allegedly comparable properties in the vicinity, and in other areas. Bona fide sales of comparable properties, made within a reasonable time before the date of taking of the property involved may be the best obtainable evidence of market value at the time of taking. Each commissioner should consider such evidence to the extent that he finds it of assistance in arriving at his finding as to market value. *Forced sales, i.e., involuntary transactions involving either a buyer compelled to buy or a seller compelled to sell, shall not be admitted as evidence of fair market value. Sales of property pursuant to an order of a bankruptcy court are one example of forced sales.*

Doc. 920 at 6-7.

Under Ohio law, a forced sale is not competent evidence of fair market value. Indeed, in *Masheter v. Brewer*, the Supreme Court of Ohio held:

> The concept of fair market value requires that the bargained price was freely arrived at, i.e., that the transaction was between a willing buyer and a willing seller. Where the sale is forced, either the seller is obligated to act with undue haste or the buyer is compelled to pay a higher price than an ordinary purchaser would be willing to pay. Therefore, the price paid on such forced sales is not competent as evidence of the fair market value of the property.

40 Ohio St. 2d 31, 33 (1974). A sale may be considered forced when it is one compelled by the legal process. *City of Toledo v. Delbert*, 1989 WL 65104, at *1 (Ohio Ct. App. June 16, 1989) ("In addition to a sale which is the result of a legal process, a sale prompted by compelling business circumstances, such as where property is taken in discharge of debt, may be viewed as a forced sale."); *see Warrensville Heights City Sch. Dist. Bd. of Educ. v. Cuyahoga Cty. Bd. of Revision*, 145 Ohio St. 3d 115 (2016) ("[S]ales conducted under supervision of a court order are forced sales which are not indicative of true value.").

Here, Plaintiff apparently plans to introduce a bankruptcy sale at the Commission hearing as comparative evidence of the fair market value of Defendants' property. Defendants thus seek an amendment to the Court's instructions, effectively barring Plaintiff from submitting this evidence to the Commission because it constitutes a forced sale. The Court, however, finds that Defendants' request would be more appropriately suited for a motion in limine. *See, e.g., Rockies Express Pipeline, LLC v. 4.895 Acres of Land, More or Less, In Butler Cty. Ohio*, 2009 WL 1163054 (S.D. Ohio Apr. 28, 2009). This is because whether a sale was "forced" is an individualized inquiry in which the offeror of the evidence must establish that a particular sale was voluntary. *See Hagan v. Madison Ave. Land Co.*, 1991 WL 39768 (Ohio Ct. App. Mar. 21, 1991). To amend the Court's instructions, without a full understanding of the evidence Plaintiff seeks to introduce, would deprive Plaintiff of the opportunity to rebut Defendants' contention of a forced

sale. Accordingly, the Court **DENIES** Defendants' Motion with respect to amending the instruction on comparable sales.

### 2. Mineral Valuation

Second, Defendants ask the Court to amend its instruction regarding mineral valuation to make clear that the Commission must consider the full value of the coal on its property, and not just the royalties stemming from that coal. Defendants argue that limiting the Commission's evaluation of mineral rights to royalties ignores their full property interest, which is complete ownership of the coal, and not a mere lessor interest that generates royalties. Defendants have, therefore, proposed the following amendment, which is reflected in the italicized language:

> **Mineral Valuation.** In addition to comparable sales, income capitalization may be used to determine the fair market value of mineral properties, if the owner proves that sufficient minerals remain to allow the commercial recovery and sale of the minerals and if the owner has established beyond mere speculation that Rover's actions have impeded his or her ability to access those same minerals. The Commission may assess the foreseeable net income flow from the property for its productive life, based on evidence derived from or demonstrably related to the actual market *for the minerals in question*, reduced to a present value figure.

Doc. 920 at 8.

In *United States v. 103.38 Acres of Land, More or Less, Situated in Morgan Cty., Com. of Ky.*, the Sixth Circuit held that in the absence of comparable sales evidence, "the logical first step in valuing land is to determine the value of the mineral in place." 660 F.2d 208, 212 (6th Cir. 1981). The Sixth Circuit then went on to state that some form of a royalty capitalization method is the appropriate way to value mineral deposits. *Id.* ("In the absence of probative comparable sales, we believe that some form of royalty capitalization is an appropriate means of valuing the mineral deposit located on the Oldfield land."). The Court's final instructions to the Commission reflects this guidance. *See* Doc. 722 at 28 ("The Commission may assess the foreseeable net income flow from the property for its productive life, based on evidence derived from or

4

demonstrably related to the actual market in mineral royalties, reduced to a present value figure."); *cf. 103.38 Acres of Land*, 660 F.2d at 212 ("[T]he value of a coal deposit is determinable by multiplying the recoverable tonnage of mineral by a given royalty per ton, and by discounting the sum thus obtained to present value.").

Here, the Court finds that its instructions to the Commission fully and accurately reflect a recognized method of mineral valuation. While Defendants present out-of-circuit case law offering a competing method, *Whitney Benefits, Inc. v. United States*, 18 Cl. Ct. 394, 407- 410 (Fed. Cl. 1989), the Court is not compelled, on this basis alone, to amend its instruction nearly two years after the fact. Accordingly, the Court **DENIES** Defendants' Motion with respect to amending the instruction on mineral valuation.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion to Supplement Instructions [#920].

**IT IS SO ORDERED.**

           /s/ Algenon L. Marbley
           **ALGENON L. MARBLEY**
           **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 27, 2020**