IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROVER PIPELINE LLC, | : | |
| | : | |
| Plaintiff, | : | Case No.:  2:17-cv-105 |
| | : | |
| v. | : | CHIEF JUDGE ALGENON MARBLEY |
| | : | |
| MARK C. KANZIGG, *et al.*, | : | Magistrate Judge Kimberly Jolson |
| | : | |
| Defendants. | : | |

### REPORT AND RECOMMENDATION OF THE COMMISSION REGARDING PROPERTY OWNED BY JUDITH BARRAX

The captioned case includes a compensation dispute between Rover Pipeline, LLC ("Rover") and Judith Barrax ("Barrax").  Pursuant to instructions issued by Chief Judge Marbley, the dispute came on for a hearing before the Commission on January 25, 2023.  *See generally* Final Order on Instructions, ECF No. 722 ("Final Instructions").  At the conclusion of the hearing, the Commission took the matter under advisement.[1]  In accordance with Federal Rule of Civil Procedure 71.1 and Chief Judge Marbley's instructions, the Commission now issues its Report and Recommendation regarding the amount of compensation due to Barrax.

### Standard Involved

As Chief Judge Marbley explained in his Final Instructions, "[t]he Commission acts as an assessing body in determining the amount of compensation and the amount of any damages." Final Instructions, ECF No. 722 at PageID 11799.  In fulfilling its duties, the Commission is bound by the Court's instructions.  *See* Final Instructions, ECF No. 722 at PageID 11806.  This includes all

---

[1]     In addition to the panel comprised of the undersigned Commissioners, Commissioner G. Franklin Hinkle, II also attended the hearing as a designated alternate pursuant to Chief Judge Marbley's instructions.  *See* Final Instructions, ECF No. 722 at PageID 11802-11803.  As the alternate, Commissioner Hinkle took no part in the deliberations or in the writing of this Report and Recommendation.

relevant instructions, with no one instruction to be afforded paramount importance.  *See id.* at PageID 11804, 11806.

In conducting its deliberations, the Commission adhered to the instructions provided by the Court.

## Discussion

As background, the Commission notes that Barrax owns approximately 46.186 acres in Belmont County, Ohio that are at issue in this lawsuit, with three parcels involved.[2]  In order to build a natural gas pipeline, Rover Pipeline acquired temporary easements in regard to the Barrax property.  It is settled that "the date of the take is February 2, 2017."  Final Instructions, ECF No. 722 at PageID 11813.

A typical just compensation determination involves ascertaining the difference, if any, between the fair market value of the subject property before the date of the take and the value of the subject property after the take.  Any decrease from the pre-taking value to the post-taking value is the just compensation due to the landowner.  *See id.* at 11814-11815.  This may include damages to the residue.  *See id.* at 11814.  Finally, in addition to the permanent easement and damages, one or more temporary easements obtained for the purpose of constructing the natural gas pipeline can be involved.  *See id.* at 11818.  Pursuant to the Commission instructions, "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken.  That fair market value is the fair rental value."  *Id.*  Additionally, "[f]air market value is the amount of money that could be obtained on the market at a voluntary sale of the estate for purposes of obtaining a permanent easement."  *See id.* at 11814.

As discussed more later, the just compensation determination involving the Barrax

---

[2] Neither party requested a property view by the Commission, and no such view was held.

property does not present the issues of diminution of value or damage to the residue. The issue before the Commission is the value to Barrax of temporary easements that Rover obtained. *See* Orders, ECF Nos. 813, 877, and 881 (granting Rover temporary easements).

Barrax never answered the operative complaint, and no counsel has appeared on her behalf in this litigation. Accordingly, Barrax fell within the group of identified landowners who were served for purposes of the underlying condemnation but who failed to participate in this litigation. *See* Order of Commission Chair Setting Hearing Date, ECF No. 987 at PageID18659. These landowners' just compensation hearing was set for a January 25, 2023 hearing. *See id.* at PageID18660. In connection with that hearing, the Commission Chair directed Rover to effectuate notice of the compensation hearing by serving the Order of Commission Chair Setting Hearing Date and filing proof of service on the docket. *See id.* Rover attempted to effectuate service by personal service, by certified mail, and by regular mail. *See* Federal Rule 71.1(d)(3)(B) Certificate Related to Service, ECF No. 988 at PageID 18661. Thereafter, Rover satisfied the service requirement by notice by publication. *See* Notice, ECF No. 989.

The just compensation hearing on Barrax's property commenced on January 25, 2023. Due to inclement weather, Commissioner April Bott Moore was unable to participate in the hearing. Pursuant to Chief Judge Marbley's instructions, the Commission Chair appointed Alternate Commissioner Tom Horner to the Barrax panel. *See* ECF No. 722 at PageID 11802; Hrg. Tr. at 4:17-25 to 5:1-6. [3]

---

[3]  Pursuant to the instructions of the Commission Chair, Rover has supplied the Commission with a copy of the certified transcript of the January 25, 2023 Compensation Hearing. Hrg. Tr. at 108:24-25 to 109:1-3. A copy of that transcript has not been filed on the docket. All references to the hearing transcript are to the original pagination of that transcript. Rover is directed to file a copy of the hearing transcript immediately so that the transcript is readily available to the parties and the Court.

Only Rover appeared and presented hearing testimony on the just compensation issues. This took the form of testimony by Rover's expert, certified general real estate appraiser James A. Herbig of Integra Realty Resources. Echoing his expert report, Herbig testified to his opinions, which he described were held to "a reasonable degree of professional certainty." Hrg. Tr. at 36:17-25 to 37:1-2, 44:1-5, 94:1-3, 99:10-12.

Pursuant to Chief Judge Marbley's instructions, "[t]he property must be valued for the most valuable use for which it may reasonably, lawfully, and practically be used. This is called the highest and best use." Final Instructions, ECF No. 722 at PageID 11815. Herbig testified that the highest and best use of the Barrax property before and after the pipeline easement was recreational use or agricultural use. *See* Hrg. Tr. at 43:7-19, 86:5-7, 86:18-21, 87:5-8.

In reaching this conclusion, Herbig testified that he employed a four-prong analysis in which he regarded what was physically possible, legally permissible, financially feasible, and maximally productive. *See id.* at 41:18-24, 43:20-25, 86:22-25 to 87:1-3. In regard to the physically possible and financially feasible prongs, Herbig explained that the property is heavily wooded, which made farming a poor option. *See id.* at 43:12-14. In regard to the legally permissible prong, Herbig looked at the property's zoning and concluded that because "[t]hat area had no zoning," then, "from [his] understanding, they can do anything with it."[4] *Id.* at 54:14-25 to 55:1-5. In regard to the maximally productive prong, he noted that a house could be built on the property for residential use but explained that given the nearly 50 acres involved, the highest and best use would be either recreational or agricultural. *See id.* at 43:14-19.

Having explained how he arrived at the highest and best use, Herbig subsequently testified

---

[4] Pursuant to Chief Judge Marbley's instructions, "[z]oning may be a significant factor in determining potential use. Compensation must be based upon the market value for the highest and best use lawful under existing zoning regulations." Final Instructions, ECF No. 722 at PageID 11816.

that the best indication of value is a sales comparison approach. *See id.* at 56:4-9, 87:18-25 to 88:1-8, 88:18-21. Chief Judge Marbley has instructed the Commission that "[b]ona fide sales of comparable properties, made within a reasonable time before the date of taking of the property involved may be the best obtainable evidence of market value at the time of taking." Final Instructions, ECF No. 722 at PageID 11811.

In applying the sales comparison approach, Herbig testified that he obtained a list of comparable Belmont County sales and "selected the four or five that we considered most similar to the subject basically by size of tract." Hrg. Tr. at 92:1-3, 93:1-5. The per-acre value for the comparable tracts ranged from $1,923 an acre to $4,674 an acre. *See id.* at 92:21-25 to 93:1-5. Herbig concluded that a fair market value for the Barrax property was $3,500 an acre, which applied to the (rounded up) 46.19 Barrax acres produced a total value of $161,700. *See id.* at 93:13-25.

Herbig also testified as to the easements involved. He indicated that he was not asked to value the permanent easement involved, but only the value of the temporary easements and the additional temporary workspace easements.[5] *See id.* at 94:14-21, 95:7-10. The temporary easements involved constituted .51 acres, 4.28 acres, and 2.18 acres. *See id.* at 96:15-25 to 97:1-4. Herbig testified that he did not value the temporary easement differently than the additional temporary workspace easements. *See id.* at 97:5-8.

Pursuant to Chief Judge Marbley's instructions, it is well settled that "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken" and "[t]hat fair market value is the fair rental value." Final Instructions, ECF No. 722 at PageID 11818. Herbig tracked this approach. He explained:

---

[5] Testimony indicated that Rover had previously paid Barrax for the permanent easement. *See* Hrg. Tr. at 85:1-8.

> We came up with the previous amount of 3,500 per acre, then we took the temporary workspace easement and the additional temporary workspace times the 3,500. They are basically going to lease this land for a period of four years, so we calculate the total easement area times the ten percent return to the property owner for a period of four years and arrive at the estimated $9,772.

Hrg. Tr. at 97:21-25 to 98:1-4. Note the application of the 10% rate of return for estimated reasonable rent based on the Fee Simple Value, which Herbig perhaps explained better in his Report (Hrg. Ex. E at pages 41-42) than in his testimony. He based the estimated rate on interviews with real estate and governmental parties familiar with land leases. *See* Hrg. Ex. E, Report, at 41.

The end result is that Herbig testified that the $9,772 figure constitutes the just compensation owed to Barrax. *See* Hrg. Tr. at 99:6:12. In reaching this conclusion, Herbig testified that there was no damages to the residue involved. *See id.* at 99:13-23.

The Commission agrees with Herbig. Three points necessarily attach to this conclusion.

First, the instant just compensation determination is unusual insofar as the presentation of evidence and framing of the issues was one-sided. This statement in no way implies that the presentation by Rover was unfair. In reaching its recommendation, the Commission considered Herbig's testimony and all of the exhibits admitted into evidence. The Commission credits Herbig's testimony and the evidence upon which he relied to calculate the amounts discussed. In so doing, the Commission is cognizant that no Commissioner is duty-bound to accept Herbig's opinion. In light of his background and experience, generally accepted appraising methodology, and the account of how he reached his conclusions, however, the undersigned members of the Commission found Herbig to be a credible, informed, and thoughtful witness. The Commission found his core factual contentions, noted throughout the above discussion, to be credible and adopts them as the findings of the Commission. In noting the unusual nature of a one-sided hearing, then, the Commission is simply noting that there was no contrary evidence presented.

Second, the Commission notes that it is limited to the evidence and the record before it.

The evidence before the Commission was only presented by Rover. The lack of opposing evidence left Rover's evidence uncontroverted. The record contains no evidence of a before/after permanent easement figure and no evidence of damage. Moreover, the 10% rent rate is uncontroverted.

Third, the instant just compensation determination is also somewhat unusual because it involves only temporary easements. This means that a typical analysis for a permanent easement is not before the Commission—meaning no assessment of the pre-take market value of the property and any diminution in market value of the permanent easement area to create a post-taking market value of the property is necessary. This leaves the Commission with the task of conducting the only remaining calculation necessary to adduce the fair market value, or fair rental value, of the temporary easements.

Given the foregoing, the recommended just compensation award for the Barrax property is comprised of the following:

| | |
|---|---|
| **Market Value Taken** | $0 |
| **Damage** | $0 |
| **Temporary Easements** | $9,772 |
| **Total Hearing Compensation Due Barrax** | $9,772 |

In arriving at this number, the Commission notes that Herbig at times rounded numbers. This included *the acres involved* (46.19 acres v. 46.186 acres), *the easements involved* (a combined 6.98 in Hrg. Ex. E, Report, at page 42 v. a combined 6.97 in his testimony at Hrg. Tr. at 96:15-25 to 97:1-4), and *the valuation per acre* ($3,500 in his testimony at Hrg. Tr. at 93:20 v. $3,501 in his Hr. Ex. E, Report and its executive summary at page 2). Herbig arrived at a compensation amount variously expressed as $9,770 (in his Hr. Ex. E, Report at 43 and in his testimony at Hrg. Tr. at 98:10-12, 99:6-12) and as $9,772 (in his testimony at Hrg. Tr. at 98:4). Rover's counsel expressly

7

requested that the Commission recommend just compensation of $9,772.  *See* Hrg. Tr. at 105:23-25 to 106:1-3.  The Commission credits the methodology applied, recognizes the "estimate" nature of the numbers presented, and credits the highest amount cited as the just compensation.

### Recommendation

The task before the Commission is to recommend the just compensation due Barrax.  Based on the foregoing findings and discussion, it is the unanimous recommendation of the Commission that the Court order Rover to compensate Barrax in the amount of $9,772.[6]

The parties involved in this compensation dispute are reminded that "a party involved in the hearing with which [this report and recommendation] is concerned may file specific and detailed objections to—or a motion to adopt or modify—the [report and recommendation] no later than eleven (11) days after a copy is served."  *See* Final Instructions, ECF No. 722 at PageID 11801.  The Clerk shall attempt service of this Report and Recommendation by ordinary mail directed to Barrax's last known address.

**IT IS SO ORDERED.**

*/s/ Shawn Judge*
Shawn Judge (0069493)
Commission Chair

*/s/ Craig Paynter*
Craig Paynter
Commissioner

*/s/ Tom Horner*
Tom Horner
Commissioner

---

[6] Given that the Commission's deliberations have concluded, the hearing exhibits will now be delivered by the Commission Chair to the Court.  *See* Final Instructions, ECF No. 722 at PageID 11802.