IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROVER PIPELINE LLC, | : | |
| | : | |
| Plaintiff, | : | Case No.: 2:17-cv-105 |
| | : | |
| v. | : | CHIEF JUDGE ALGENON MARBLEY |
| | : | |
| MARK C. KANZIGG, *et al.*, | : | Magistrate Judge Kimberly Jolson |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION OF THE COMMISSION
REGARDING PROPERTY OWNED BY THE KANZIGG HEIRS**

The captioned case includes a compensation dispute between Rover Pipeline, LLC ("Rover") and the unknown heirs and assigns of Harry J. Kanzigg and Lewis E. Kanzigg ("the Kanzigg heirs").[1] Pursuant to instructions issued by Chief Judge Marbley, the dispute came on for

---

[1] The Kanzigg property is owned by "multiple cousins, uncles and aunts, all of whom had inherited different portions and shares of the property from the original landowner, Alexander Kanzigg," who was born in 1884. Hr. Tr. at 13:4-11. Two initial comments regarding "the Kanzigg heirs" are necessary.

First, as counsel for Rover explained at the compensation hearing, Rover has signed easement agreements with two-thirds of the of the stakeholders who have an ownership interest in the Kanzigg property, including Harry Kanzigg, who owns 52 percent of the property. *See id.* at 7:25 to 8:1-17. The stakeholders with interests involved in the compensation hearing are those individuals whom Rover cannot identify or locate despite diligent efforts. *See id.* at 8:17-19, 11:4-12, 13:11-16, 14:8-12. Counsel for Rover summarized the relevant title report contents as follows:

> [The Kanzigg property] was originally owned by Alexander Kanzigg . . . . And upon information and belief, Alexander has six children two of whom were Harry and Lewis . . . . And for reasons unknown, Alexander transferred the entirety of the properties to three of his six children. He transferred it to Charles Kanzigg, Della Kanzigg and Lizzie Kanzigg, and left Harry and Lewis with nothing in the transfer. Eventually, Charles and Lizzie passed away . . . . Charles and Lizzie had not been married and had no children so their one-third interests were split between the remaining children of Alexander Kanzigg, and that is how Harry and Lewis were believed to get their one-sixth interest each from the proportionate shares of Charles and Lizzie.

*Id.* at 14:15-25 to 15:1-7. Given that they were "born in the late 18002, early 1900s," Harry and

a hearing before the Commission on January 25, 2023. *See generally* Final Order on Instructions, ECF No. 722 ("Final Instructions"). At the conclusion of the hearing, the Commission took the matter under advisement.[2] In accordance with Federal Rule of Civil Procedure 71.1 and Chief Judge Marbley's instructions, the Commission now issues its Report and Recommendation regarding the amount of compensation due to the Kanzigg landowners.

## Standard Involved

As Chief Judge Marbley explained in his Final Instructions, "[t]he Commission acts as an assessing body in determining the amount of compensation and the amount of any damages." Final Instructions, ECF No. 722 at PageID 11799. In fulfilling its duties, the Commission is bound by the Court's instructions. *See* Final Instructions, ECF No. 722 at PageID 11806. This includes all relevant instructions, with no one instruction to be afforded paramount importance. *See id.* at PageID 11804, 11806. The Commission adhered to the Court's instructions.

## Discussion

As background, the Commission notes that the Kanzigg heirs each have a one-sixth interest in two parcels of land constituting 98.0 acres in Belmont County, Ohio that are at issue in this

---

Lewis are presumed deceased, and Rover was unable to uncover any information about where they moved, where they died, or where their interest should go. *See id.* at 15:8-24.

    Second, as counsel for Rover also explained, various public records feature "Kanzigg" spelled with one "G" while others feature two "Gs." *See id.* at 12:11-25 to 13:1-2. Moreover, Mark Kanzigg spells his last name with two "Gs" while various cousins spell it with one "G." *See id.* at 12:21-23. For consistency, the Commission tracks Rover's spelling and uses two "Gs" here.

[2]    In addition to the panel comprised of the undersigned Commissioners, Commissioner G. Franklin Hinkle, II also attended the hearing as a designated alternate pursuant to Chief Judge Marbley's instructions. *See* Final Instructions, ECF No. 722 at PageID 11802-11803. As the alternate, Commissioner Hinkle took no part in the deliberations or in the writing of this Report and Recommendation.

lawsuit, with two parcels involved.³ *See* Hrg. Tr. at 54:11-13, 60:4. In order to build a natural gas pipeline, Rover Pipeline acquired permanent and temporary easements in regard to the Kanzigg property. *See* Opinion & Order, ECF No. 881 (granting Rover temporary easements). It is settled that "the date of the take is February 2, 2017." Final Instructions, ECF No. 722 at PageID 11813.

The Kanzigg heirs never answered the operative complaint, and no counsel has appeared on their behalf in this litigation. Accordingly, the Kanzigg heirs fall within the group of identified landowners who were served for purposes of the underlying condemnation but who failed to participate in this litigation. *See* Order of Commission Chair Setting Hearing Date, ECF No. 987 at PageID18659. These landowners' just compensation hearing was set for a January 25, 2023 hearing. *See id.* at PageID 18660. In connection with that hearing, the Commission Chair directed Rover to effectuate notice of the compensation hearing by serving the Order of Commission Chair Setting Hearing Date and filing proof of service on the docket. *See id.* Rover satisfied the service requirement by notice by publication. *See* Federal Rule 71.1(d)(3)(B) Certificate Related to Service, ECF No. 988 at PageID 18661; Notice, ECF No. 989. *See also* Opinion & Order, ECF No. 881 at PageID 15074 (recognizing that service by publication satisfies Rover's service obligation in regard to the Kanzigg heirs).

The just compensation hearing on the Kanzigg property commenced on January 25, 2023. Due to inclement weather, Commissioner April Bott Moore was unable to participate in the hearing. Pursuant to Chief Judge Marbley's instructions, the Commission Chair appointed Alternate Commissioner Tom Horner to the Kanzigg heir panel. *See* ECF No. 722 at PageID 11802; Hrg. Tr. at 4:17-25 to 5:1-6. ⁴

---

³ There was no request for a property view by the Commission, and no such view was held.

⁴ Pursuant to the instructions of the Commission Chair, Rover has supplied the Commission with a copy of the certified transcript of the January 25, 2023 Compensation Hearing. Hrg. Tr. at

3

A typical just compensation determination involves ascertaining the difference, if any, between the fair market value of the subject property before the date of the take and the value of the subject property after the take. Any decrease from the pre-taking value to the post-taking value is the just compensation due to the landowner. *See id.* at 11814-11815. This may include damages to the residue. *See id.* at 11814. Finally, in addition to the permanent easement and damages, one or more temporary easements obtained for the purpose of constructing the natural gas pipeline can be involved. *See id.* at 11818. Pursuant to the Commission instructions, "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken. That fair market value is the fair rental value." *Id.* Additionally, "[f]air market value is the amount of money that could be obtained on the market at a voluntary sale of the estate for purposes of obtaining a permanent easement." *See id.* at 11814.

The just compensation determination involving the Kanzigg property does not present the issue of damage to the residue. *See* Hrg. Tr. at 75:22-25 to 76:1-18, 80:1-8. The issues before the Commission are the diminution in value presented by the permanent easement and the value of the temporary easements that Rover obtained.

Only Rover appeared and presented hearing testimony on these just compensation issues. This took the form of testimony by Rover's expert, certified general real estate appraiser James A. Herbig of Integra Realty Resources. Echoing his expert report, Herbig testified to his opinions, which he consistently described were held to "a reasonable degree of professional certainty." Hrg. Tr. at 36:17-25 to 37:1-2, 44:1-5, 76:15-18, 78:12-14, 82:2-5.

---

108:24-25 to 109:1-3. All references to the hearing transcript are to the original pagination of that transcript. Unless it has already done so by the time this Report and Recommendation is filed, Rover is directed to file a copy of the hearing transcript immediately so that the transcript is readily available to the parties and the Court.

Pursuant to Chief Judge Marbley's instructions, "[t]he property must be valued for the most valuable use for which it may reasonably, lawfully, and practically be used. This is called the highest and best use." Final Instructions, ECF No. 722 at PageID 11815. Herbig testified that the highest and best use of the Kanzigg property before and after the pipeline easement was recreational use or agricultural use. *See* Hrg. Tr. at 42:20-25 to 43:1-19.

In reaching this conclusion, Herbig testified that he employed a four-prong analysis in which he regarded what was physically possible, legally permissible, financially feasible, and maximally productive. *See id.* at 41:18-24, 43:20-25. In regard to the physically possible and financially feasible prongs, Herbig explained that the property is heavily wooded, which made farming a poor option. *See id.* at 43:12-14. In regard to the legally permissible prong, Herbig looked at the property's zoning and concluded that because "[t]hat area had no zoning," then, "from [his] understanding, they can do anything with it."[5] *Id.* at 54:14-25 to 55:1-5. In regard to the maximally productive prong, he noted that a house could be built on the property for residential use but explained that given the nearly 50 acres involved, the highest and best use would be either recreational or agricultural. *See id.* at 43:14-19.

Having explained how he arrived at the highest and best use, Herbig subsequently testified that the best indication of value is a sales comparison approach. *See id.* at 56:4-9. Chief Judge Marbley has instructed the Commission that "[b]ona fide sales of comparable properties, made within a reasonable time before the date of taking of the property involved may be the best obtainable evidence of market value at the time of taking." Final Instructions, ECF No. 722 at PageID 11811.

---

[5] Pursuant to Chief Judge Marbley's instructions, "[z]oning may be a significant factor in determining potential use. Compensation must be based upon the market value for the highest and best use lawful under existing zoning regulations." Final Instructions, ECF No. 722 at PageID 11816.

In applying the sales comparison approach, Herbig testified that "[y]ou try to find sales of similar-type tracts" and that he "found sales in Belmont County and used those sales to estimate our final value." Hrg. Tr. at 56:13-4, 56:17-19. He explained that this approach would yield the highest per-acre value for the unimproved Kanzigg property, which was not generating any income. *See id.* at 57:25 to 58:1-10. Herbig thus reviewed a potential 30 properties and settled on five sales as involving comparable tracts, assessing location, access, road frontage, the size of the tracts, and the shape, as well as zoning and development. *See id.* at 60:5-8, 60:20-24, 61:20-25, 63:10-13. He testified that the per-acre value for the five comparable tracts relied upon ranged from $1,461 an acre to $3,077 an acre. *See id.* at 68:16-25 to 69:1. Herbig concluded that a fair market value for the Kanzigg property was $2,500 an acre—the middle between the $1,461 and $3,077 range—which, applied to the 98.0 acres involved, produced a total value of $245,000. *See id.* at 67:3-8, 69:2-6.

Herbig also testified as to the easements involved. He indicated that the permanent easement totals 2.83 acres across the two parcels involved, with one easement 2.03 acres and the other .8 acres. *See id.* at 49:18-25 to 50:1-4. Herbig testified that, as its name would suggest, the permanent easement lasts forever on the properties involved and Rover will have a permanent ownership interest in the 2.83 acres. *See id.* at 51:18-24. To determine the fair market value of the permanent easement, Herbig multiplied the 2.83 acres involved by the per-acre fair market value of $2,500. *See id.* at 69:7-17. He then applied a 50% devaluation based on the fact that because there was already another pipeline on the property with an accompanying easement, there could not be any building. *See id.* at 69:18-25 to 70:1-11. The result, Herbig testified, is total just compensation of $3,540.[6] *See id.* at 72:3-7. The Kanzigg heirs, two one-sixth ownership interests,

---

[6] The exact figure stated in the appraisal report before it was then rounded up is $3,538. *See* Hrg. Ex. D at 44.

are entitled to a proportionate one-sixth of this amount.

Herbig also testified that the temporary easements involved constituted 4.23 acres and 1.27 acres. *See id.* at 50:5-11. He explained that the total duration of these easements was for four years. *See id.* at 52:2-7. Herbig also explained that the concept here is that Rover is renting or leasing the temporary easement ground from the Kanzigg heirs for the set period of time. *See id.* at 76:25 to 77:1-12. This tracks Chief Judge Marbley's instructions, which provide that "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken" and "[t]hat fair market value is the fair rental value." Final Instructions, ECF No. 722 at PageID 11818.

To opine on fair rental value, Herbig testified that he reviewed properties in his files from all over the country and noted rental rates of 9% to 11%. *See* Hrg. Tr. at 77:18-25 to 78:1-8. Selecting the mid-point, Herbig applied a rental rate of 10%. *See id.* at 78:9-11. Accordingly, the remaining steps in his analysis were as follows: "We took the easement area times our unencumbered value of $2,500 per acre. We gave them a ten percent return for a period of now four years. So multiplying it out in that formula, we came up with $5,500 for the two temporary easement areas." *See id.* at 78:19-24. In other words, multiplying the 5.5 temporary easements (4.23 acres plus 1.27 acres) by $2,500 equaled $13,750—which multiplied by the 10% rental rate equals $1,375 per year. Multiplying the $1,375 by 4 years produces the $5,500 amount for the temporary easements. *See id.* at 78:25 to 79:1-17. The Kanzigg heirs, two one-sixth ownership interests, are entitled to a proportionate one-sixth of this amount.

Given the foregoing, Rover's proposed just compensation award for the Kanzigg property is comprised of the following:

| | |
|---|---|
| **Market Value Taken/Permanent Easement** | $3,540 |
| *($590 each 1/6 interest)* | |
| **Damage** | $0 |
| **Temporary Easements** | $5,500 |
| *($916.67 each 1/6 interest)* | |
| **Total Value of All Easements** | $9,040 |
| **Total Hearing Compensation Due Each 1/6 Interest** | $1,506.67 |
| *($590.00 permanent easement plus $916.67 temporary easement)* | |

Accordingly, Herbig opined that $1,506.67 each interest constitutes the just compensation that is warranted.  *See* Hrg. Tr. at 81:16-25 to 82:1-1.

The Commission agrees with Herbig.  Two points necessarily attach to this conclusion.

First, the instant just compensation determination is unusual insofar as the presentation of evidence and framing of the issues was one-sided.  This statement in no way implies that the presentation by Rover was unfair.  In reaching its recommendation, the Commission considered Herbig's testimony and all of the exhibits admitted into evidence.  The Commission credits Herbig's testimony and the evidence upon which he relied to calculate the amounts discussed.  In so doing, the Commission is cognizant that no Commissioner is duty-bound to accept Herbig's opinion.  In light of his background and experience, generally accepted appraising methodology, and the account of how he reached his conclusions, however, the undersigned members of the Commission found Herbig to be a credible, informed, and thoughtful witness.  The Commission found his core factual contentions, noted throughout the above discussion, to be credible and adopts them as the findings of the Commission.  In noting the unusual nature of a one-sided

8

hearing, then, the Commission is simply noting that there was no contrary evidence presented.

Second, the Commission notes that it is limited to the evidence and the record before it. The evidence before the Commission was only presented by Rover. The lack of opposing evidence left Rover's evidence uncontroverted; there was, for example, no evidence in the record that a 50% reduction in the permanent easement value was too large, that there was damage to the residue, or that the 10% rent rate is in any way problematic. Based on the record before the Commission, there is no cause to disagree with Rover's reliance on these figures and the testimony that no damage exists.

### Recommendation

The task before the Commission is to recommend the proportionate just compensation due the Kanzigg heirs. Based on the foregoing findings and discussion, it is the unanimous recommendation of the Commission that the Court order Rover to compensate the unknown heirs and assigns of Harry J. Kanzigg in the amount of $1,506.67 and the unknown heirs and assigns of Lewis E. Kanzigg in the amount of $1,506.67.[7]

The parties involved in this compensation dispute are reminded that "a party involved in the hearing with which [this report and recommendation] is concerned may file specific and detailed objections to—or a motion to adopt or modify—the [report and recommendation] no later than eleven (11) days after a copy is served." *See* Final Instructions, ECF No. 722 at PageID 11801.

**IT IS SO ORDERED.**

---

[7] Given that the Commission's deliberations have concluded, the hearing exhibits will now be delivered by the Commission Chair to the Court. *See* Final Instructions, ECF No. 722 at PageID 11802.

/s/ Shawn Judge
Shawn Judge (0069493)
Commission Chair

/s/ Craig Paynter
Craig Paynter
Commissioner

/s/ Tom Horner
Tom Horner
Commissioner